**Jackson Monroe MARTIN, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F-82-545.**

Court of Criminal Appeals of Oklahoma.

Dec. 9, 1983.

Certiorari Denied March 5, 1984.
See 104 S.Ct. 1448.

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

### OPINION

CORNISH, Judge:

Appellant was convicted in Bryan County District Court of Indecent Exposure, After Former Conviction of Felonies, and was sentenced to ninety-nine (99) years in prison. The sentence is modified to twenty (20) years in prison and the judgment is affirmed.

On September 23, 1981, at about 10:00 p.m., Brian Remshardt saw appellant looking in the bathroom window of Karen Sampson's house. Appellant was fondling his exposed genitals. Remshardt yelled at appellant, then chased him. Appellant ran past Remshardt's house, where Barbara Remshardt was standing on the porch. Barbara Remshardt testified that, as appellant passed within fifteen feet of her, she "saw his penis."

Appellant took the stand and told his version of the incident as follows:

Q. ... Brian Remshardt testified that you were standing at Karen Sampson's window with your genitals out, one hand on them, one hand on her window. Did he testify truthfully?

A. He did. I was peeping Tomming.

Q. And you had your genitals out at that time?

A. Yes, sir, at that time.

Q. Exposing them?

A. Yes, sir, at that time.

Q. And when you ran around the house you didn't have—

A. No, sir, I did not.

Q. You had time to slip your pants up— pull 'em back up?

A. Yes, sir, I did.

\*   \*   \*.   \*   \*   \*

Q. When you ran by that house where Mrs. [Barbara] Remshardt lived, were you exposing yourself then?

A. No, sir. She lied. There's no way she could have seen me, simple reason my groins ain't that big (indicating).

Appellant's first assignment of error is that the information was fatally defective in that it failed to allege that the indecent exposure occurred in a public place. We disagree. Appellant was charged under 21 O.S.1981, § 1021, which reads in pertinent part:

Every person who willfully either: (1) Lewdly exposes his person, or private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby ... is guilty of a felony ....

As the language of the statute clearly indicates, indecent exposure need not always occur in a public place. *Spelling v. State,* 55 Okl.Cr. 195, 28 P.2d 584 (1933). The offense may be committed any place where others are present, including streets and private residences. *Davison v. State,* 281 P.2d 196 (Okl.Cr.1955). The information charged that appellant did "willfully, lewdly, and feloniously expose his person and private parts in a place, to wit: 813 N. 5th in the City of Durant, Bryan County, and in a place where there were present other persons to be offended and annoyed thereby, to wit: Barbara Remshardt." We conclude that the information incorporated the pertinent statutory language and was not defective.

As his second assignment of error, appellant argues that the State presented insufficient evidence to prove that he willfully exposed himself. Appellant argues that he made no effort to call attention to himself,

and that Barbara Remshardt saw his penis only because Brian Remshardt yelled at him and chased him. Therefore, concludes appellant, any exposure of his genitalia to Mrs. Remshardt was accidental or negligent, but not willful.

■ Appellant's argument is not persuasive. Title 21 O.S.1981, § 1021, provides that a person is guilty of indecent exposure if he exposes his private parts "in any place where there are present other persons to be offended or annoyed thereby..." That statute does not require that the accused intend that someone see his display. It requires only that he willfully expose himself in a place where others could see him and be annoyed. We believe that the area immediately outside another's bathroom window or several feet from another's front porch is the kind of place contemplated by the statute.

■ Eyewitnesses testified that they saw appellant exposing himself at Ms. Sampson's window and again near the Remshardts' porch. Appellant himself stated he willfully exposed himself at the window. We believe this to be sufficient evidence to support the jury's conclusion that appellant willfully exposed his private parts in a place where other persons could see him and be annoyed.

Appellant's third assignment of error is that the court erred in refusing his requested instructions on the lesser included offense of Peeping Tom. We disagree.

■ Peeping Tom and Indecent Exposure are separate and distinct offenses: Peeping Tom is defined in 21 O.S.1981, § 1171, Indecent Exposure in 21 O.S.1981, § 1021. If each offense requires proof of some fact or element which the other does not require to sustain a conviction, then one is not a lesser included offense of the other. *Wilson v. State,* 649 P.2d 784 (Okl.Cr.1982). The Peeping Tom statute provides that:

> Every person who hides, waits or otherwise loiters in the vicinity of any private dwelling house, apartment building or any other place of residence with the unlawful and willful intent to watch,

gaze, or look upon the occupants therein in a clandestine manner, is guilty of a misdemeanor.

■ A look at the two statutes (21 O.S. 1981, § 1021 is quoted above) discloses that they share not a single essential element, other than that the offense be committed willfully. We conclude that Peeping Tom is not a lesser included offense of indecent exposure.

■ Alternatively, appellant argues that by rejecting his requested instruction on Peeping Tom the court failed to instruct on his theory of the case. This contention is without merit. The record clearly shows that appellant's theory was that he was not guilty by reason of insanity. Defense counsel made this plain in his opening statement when he said "we have entered a plea of not guilty. Not guilty by reason of insanity," and "I'm gonna ask you to find him not guilty by reason of insanity." All the evidence in appellant's behalf—the testimony of a mental health worker, of appellant's sister, and of appellant himself—was offered to show that, because of the unfortunate circumstances of his life, appellant was unable to know right from wrong.

Appellant admitted to committing Peeping Tom. But, "[w]here offenses overlap, the district attorney in his discretion may decide which statute to prosecute under." *Wilson v. State,* 649 P.2d at 786.

We conclude that, since Peeping Tom was neither a lesser included offense of the crime charged nor appellant's theory of the case, the trial court properly denied the requested instruction.

■ Appellant's fourth assignment of error is that the State committed reversible error by questioning the arresting officer about appellant's post-arrest silence. The prosecutor made the following inquiry of the arresting officer:

Q. Did he say whether he understood his *Miranda* warnings or not?

A. Yes, sir, he did.

Q. Can—do you remember the exact words he said when you asked him if he understood the *Miranda* warnings?

A. No, sir, I do not.

Q. Okay, and did you ask him if he wanted to talk to you?

A. Yes, sir.

Q. What did he say?

A. 'No, sir.'

Q. Okay.

A. He did not.

The evidence had no probative value. Its sole effect was to prejudice the appellant. *Dungan v. State,* 651 P.2d 1064 (Okl.Cr. 1982). Defense counsel, however, did not object to the questioning. Where the State improperly comments on the accused's post-arrest silence the error is deemed waived absent an objection unless it rises to the level of fundamental error. *Harris v. State,* 645 P.2d 1036 (Okl.Cr.1982). Whether the comment rises to fundamental error depends on the particular facts and circumstances of each case. Id. at 1036. Petitioner relies on *Dungan v. State,* supra, where the defendant walked onto an auto lot and drove off with a car. The owner of the lot pursued him, and the defendant abandoned the car two blocks from the lot. At trial, the prosecutor commented on Dungan's post-arrest silence. Because the evidence regarding Dungan's intent to deprive the owner of the car was circumstantial, this Court found that the error was not harmless, and reversed. In the instant case, however, there is direct evidence that appellant willfully exposed himself at Sampson's window; appellant himself admitted as much. Only moments later, Barbara Remshardt saw appellant expose himself again. Given the direct evidence of appellant's guilt, we believe the error did not influence the jury and was harmless beyond a reasonable doubt.

Appellant's fifth assignment of error is that the trial court erred when it denied him his right to present evidence that prior convictions might be invalid for enhancement purposes. This contention is without merit.

Appellant was charged under 21 O.S.1981, § 51(B), which provides that a defendant who has been previously convicted of two felonies and then is convicted of a third felony within ten years shall be sentenced to serve a minimum of twenty years in prison. The State introduced certified copies of judgments and sentences of two 1976 felony convictions. Appellant testified that he had been represented by counsel and had been convicted in those two cases. Defense counsel tried to introduce rebuttal evidence that those two convictions were invalid for enhancement purposes. Defense counsel offered to show that in one case the jury had first returned with a verdict of not guilty, and that in the other case evidence was obtained by an illegal search.

The trial court correctly refused to allow appellant to collaterally attack those two prior convictions. Such collateral attacks must be voiced by post-conviction relief procedures. See 22 O.S.1981, § 1080, which provides that, excluding a timely appeal, the post-conviction procedure is the only method for challenging a conviction.

Appellant's sixth assignment of error is that the prosecutor improperly made references to pardon and parole procedures. During cross-examination, the prosecutor asked appellant about the length of three sentences he received for convictions in 1958 and 1960. The prosecutor also asked appellant how long he actually served for each conviction.

In *McKee v. State,* 576 P.2d 302 (Okl.Cr. 1978), this Court modified the sentence because, while cross-examining the accused, the State referred to parole procedures of the Oklahoma Department of Corrections. Our concern in *McKee* was compounded by the fact that the references were incorporated into a cross-examination designed to explore the accused's prior convictions.

In the instant case, the prosecutor's references were similarly improper. Length of time served for previous convictions, received more than twenty years ago, had no probative value. Given appellant's own admissions and the direct evidence of his guilt, however, we do not believe the references to parole contributed to the jury's finding of guilt. But, in light of the extraordinary sentence recommended by the jury, it is

quite possible the jury considered the possibility of parole in arriving at the sentence.

Lastly, appellant argues that his ninety-nine year sentence is excessive. We agree.

Appellant took the stand and admitted two prior convictions for burglary in the second degree, one for contributing to the delinquency of a minor, and one for escape. On cross-examination the prosecutor elicited testimony concerning convictions received by appellant in the 1950's and 1960's: five convictions for burglary in the second degree, one for concealing stolen property, and one for grand larceny. The prosecutor also asked appellant about the several jail stints he served for the misdemeanor of Peeping Tom.

> Evidence of a conviction ... [for the purpose of attacking the credibility of a witness] is not admissible if a period of more than ten (10) years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is later, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

12 O.S.1981, § 2609(B).

In *Bunn v. State,* 85 Okl.Cr. 367, 190 P.2d 464 (1947), this Court held that the introduction in that case of evidence of other crimes without objection was not fundamental error, but that it probably had the effect of causing the jury to give the accused a more severe penalty than he would have received had such offenses been excluded from consideration by the jury. We believe something similar happened in the instant case. Defense counsel did not object to the litany of prior convictions, most of which would have been inadmissible under 12 O.S.1981, § 2609(B) quoted above. But, the effect was to portray appellant as an incurable criminal who should be locked away once and for all. We believe the prosecutor's references to the possibility of parole combined with the evidence of appellant's numerous prior convictions inflamed the passion and prejudice of the jury and prompted them to assess punishment vastly out of proportion to the gravity of the offense.

It is not unusual for a community to react to the crime of indecent exposure with passion and prejudice disproportionate to the gravity of the offense. *Boyd v. State,* 478 P.2d 980 (Okl.Cr.1970). In a number of cases over the years this Court has found it necessary to modify sentences imposed for indecent exposure. (*Boyd v. State,* supra, seven year sentence modified to two years; *Marshall v. State,* 316 P.2d 222 (Okl.Cr.1957), three year sentence modified to six months; *Baker v. State,* 291 P.2d 381 (Okl.Cr.1955), ten year sentence modified to two years; *Bunn v. State,* supra, five year prison sentence modified to sixty days in county jail; *Daves v. State,* 77 Okl.Cr. 343, 141 P.2d 603 (1943), ten year sentence modified to one year.)

Appellant's offense was devoid of aggravating circumstances. He did not seek to attract attention to himself; he did not expose himself to children; he did not assault anyone. Furthermore, we note that, although appellant has been convicted of numerous felonies, none have been violent, nor against the person. Appellant should be punished, but his punishment should be within the bounds of reason and justice, and should not be the result of passion and prejudice. *Daves v. State,* supra.

This Court is empowered to modify the judgment appealed from. 22 O.S.1981, § 1066. We believe in this case—where the prosecutor improperly commented on the possibility of parole and on prior convictions; where there were no aggravating circumstances; where appellant has never been convicted of a violent crime; where the punishment imposed was the result of passion and prejudice—justice would be best served if the sentence were modified to the statutory minimum. Accordingly we MODIFY the sentence from ninety-nine years to twenty years in prison, and AFFIRM the judgment.

BRETT, J., concurs.

BUSSEY, P.J., concurs in results.